State, *ex rel., v.* Lookout Bank.

STATE, *ex rel., v.* LOOKOUT BANK.

(*Knoxville.*    October 20, 1890.)

1. BANKS.    *Incorporated banks are not embraced by Act of 1859-60, Ch. 129.*

   *Incorporated* banks are not embraced by the provisions of the Act of
   1859-60, Ch. 129, entitled, "An Act to encourage the use of private
   capital," and therefore are not liable for the penalty therein imposed
   for taking usury in violation of that statute.    That Act applies alone
   to "persons and partnerships, and associations of persons paying
   taxes for the use of money as money-lenders."    It does not include
   corporations.

   Act construed: Act of 1859-60, Ch. 129.

   Code, §§2486-2488 (M. & V.); §§1829*f* (T. & S.).

2. SAME.    *Purpose of Act of 1859-60, Ch. 129.*

   Private, unchartered banking was prohibited absolutely by Act of 1827,
   Ch. 85 (Cor. & Nich., p. 121).    This prohibition had been so far re-
   laxed prior to the Act of 1859-60, Ch. 129, as to allow "discounting
   securities for money and shaving notes" upon payment of a license
   tax.    (Code, § 550, subsec. 9 (T. & S.).    The purpose of the Act of
   1859-60 was to further modify the Act of 1827, and to practically
   restore the right of private banking as it had existed prior to 1827.

   Cases cited: Insurance Company *v.* Insurance Company, 11 Hum., 23;
   Hazen *v.* Bank, 1 Sneed, 119.

---

FROM HAMBLEN.

---

Appeal in error from Circuit Court of Hamblen
County.    W. R. HICKS, J.

State, *ex rel.*, *v.* Lookout Bank.

THOMAS CURTIN for Relator.

JAMES G. ROSE for Bank.

LEA, J.    This is a *qui tam action* to recover a penalty of $500 for alleged usury.    The defendant is sued as an incorporated bank.    The suit is based upon §§ 2486, 2487, 2488 of (M. & V.) Code, which is copied from the Act of 1859–60, Ch. 129. The Act is entitled, "An Act to encourage the use of private capital," and the first section is as follows:

" *Be it enacted by the General Assembly of the State of Tennessee*, That hereafter all persons and partnerships, and associations of persons paying taxes for use of money as money-dealers, in accordance with the laws in such cases made and provided, shall be hereafter allowed to receive deposits, issue checks or bills of exchange, or discount notes, bills, or other securities; *Provided*, Such person shall not be allowed to charge on bills a greater discount than legal interest, and the current rate of exchange then existing in favor of the place where the bill is drawn, and against the place upon which it is drawn; *Provided further*, That this Act shall not be construed to authorize such persons, partnerships, or associations to issue and put in circulation any instrument or promise to pay money intended to pass as currency or money; *And provided further*, That no such persons or companies shall be allowed to receive on deposit

or pay out the note of any bank not chartered by this State, nor shall they pay out any interest on deposits; and for every violation of any one of these provisions, such person, partnership, or association of persons, shall be liable to a penalty of five hundred dollars, recoverable in any Court having jurisdiction thereof, one-fourth to the informer or prosecutor, and the other three-fourths to the State."

The question presented is, Do the provisions of this Act apply to *incorporated banks?* or was it intended to define and regulate the business of *private banking*, or rather of those who pay "taxes for the use of money as money-dealers?" We are of the opinion that the Act was not intended to apply to incorporated banks, for the following reasons:

*First.*—The caption shows that it applies to natural persons and not to corporations.

*Second.*—The Act does not mention, or rather omits to include within its provisions, corporations or chartered banks, although there were quite a number of them in the State at the passage of the Act. These banks were regulated by laws found in their charters, or other laws then in force.

*Third.*—The fact that the persons referred to in the Act are expressly designated as persons "paying taxes for the use of money as money-dealers," indicates that it was purposely meant to exclude banks from the operation of the statute, else the circumlocution to designate to

whom the Act applies would not have been used.

*Fourth.*—By the Act such persons, partnerships, and associations "shall be hereafter allowed to receive deposits, issue checks or bills of exchange, or discount notes, bills, or other securities." This was certainly intended to confer these privileges on some one that did not have them. Incorporated banks had the privileges already, and always had the privileges conferred by the Act. It was manifestly intended to confer these privileges upon the licensed money-dealers, and not upon incorporated banks.

*Fifth.*—The second proviso in the Act is as follows: "*Provided further*, That this Act shall not be construed to authorize such persons, partnerships, or associations to issue and put in circulation any instrument or promise to pay money intended to pass as currency or money." This was a prohibition against issuing bills or notes to circulate as money. At that time chartered banks were authorized, under certain restrictions, to issue notes to circulate as money.

*Sixth.*—The third proviso of the Act prohibits any such persons or companies "to receive on deposit or pay out the notes of any bank not chartered by this State." This is an express recognition on the face of the Act that chartered banks of this State then had the right to issue notes or bills as money, and that persons, partnerships, and associations provided for in the Act were expressly

prohibited from issuing any such bills or notes of their own, and only allowed to receive on deposit and pay out the notes of such chartered banks of this State.

*Seventh.*—At the same session of the Legislature, and only a few days prior to the passage of the Act under consideration, the Legislature of 1859–60 passed an Act entitled "An Act to reform and regulate the business of banking in Tennessee." This Act was upon the subject of incorporated banks and to regulate the same. Among other things, it authorized incorporated banks to issue circulating notes, to pass as money, and prohibited such banks from paying out any notes except such as were payable at its own counter, or that of its branches. The Act under consideration was passed a few days afterward, entitled "An Act to encourage the use of private capital," in which persons, partnerships, and associations of persons are prohibited, under the penalty of $500, from issuing notes at all. The one Act does not and was not intended to repeal the other. The first applied to incorporated banks and the latter to "persons, partnerships, and associations of persons paying taxes for the use of money, as money-dealers," and not to incorporated banks.

Prior to the Act of 1827 private or unchartered banking was held to be a "common law right; which any person might lawfully exercise." 11 Hum., 23; 1 Sneed, 119. But the Act of 1827, Ch. 85, absolutely prohibited all private, unchartered

banking, but recognized and permitted chartered banking. Car. & Nich., p. 121. The Act of 1827 was in force until the Act of 1859–60, except so modified as to create and define the privilege of "discounting securities for money, and shaving notes." Code, § 550, subsection 9. The exercise of this privilege required a license and payment of a tax. This was only a partial restoration of the common law right of private banking. It gave no authority to receive deposits, to issue checks, or to buy and sell exchange, all of which are legitimate banking operations. Thus the law stood until the Act of 1859–60, Ch. 129, was passed, and its manifest purpose was to further relax the Act of 1827 and to practically restore the common law right of private banking in the form of a licensed privilege.

The action of the Circuit Judge sustaining the demurrer to plaintiff's declaration is sustained, and his suit is dismissed, with cost.